UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| THOMAS MICHAEL SMITH,<br>Reg. No. 35031-008,<br>    Petitioner,<br><br>v.<br><br>WARDEN J.S. WILLIS,<br>    Respondent. | §<br>§<br>§<br>§    EP-15-CV-368-FM<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

Petitioner Thomas Michael Smith, a prisoner at the La Tuna Federal Correctional Institution ("FCI-La Tuna") in Anthony, Texas,[1] asks the Court, through a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), to intervene in his behalf and order the Bureau of Prisons ("BOP") to allow him to participate in the 500-hour Residential Drug Abuse Treatment Program ("RDAP").[2] After reviewing the record, and for the reasons discussed below, the Court will deny Smith's petition, pursuant to 28 U.S.C. § 2243.[3]

## BACKGROUND AND PROCEDURAL HISTORY

The United States District Court for the Southern District of Ohio sentenced Smith to 121 months' imprisonment in case number 2:08-CR-202-GLF after Smith pleaded guilty, pursuant to a

---

[1] Anthony is located in El Paso County, Texas, which is within the territorial limits of the Western District of Texas. 28 U.S.C. § 124(d)(3) (2012).

[2] Pet'r's Pet. 5, ECF No. 1.

[3] *See* 28 U.S.C. § 2243 (2012) ("A court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, *unless it appears from the application that the applicant or person detained is not entitled thereto*.") (emphasis added).

plea agreement, to conspiring to distribute over one thousand kilograms of marijuana.[4] In the original judgment, the Court recommended that Smith "be permitted to participate in the 500 hour intensive drug treatment program during his incarceration."[5]

Congress directed the BOP by statute to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."[6] The statute spawned the 500-hour RDAP. Under BOP regulations, an inmate must have a verifiable, documented drug abuse problem that occurred within twelve months of his arrest to be eligible for RDAP.[7] An inmates who successfully completes RDAP may receive an early release from up to one years' imprisonment at the discretion of the BOP.[8]

In his petition, Smith claims the RDAP staff at FCI La Tuna "arbitrarily ignored" his thirty-year history of substance abuse and denied him placement in the program.[9] He asks the Court to "[f]orthwith" order his "transfer to [the] RDAP Program at Lompoc Federal Prison Camp."[10] He also maintains the BOP's grievance system "does not comport with the rudimentary

---

[4] Order on Sentence Reduction, ECF No. 181, July 30, 2015, *United States v. Smith*, 2:08-CR-202-GLF, S.D. Ohio.

[5] J., ECF No. 154, Nov. 19, 2009, *United States v. Smith*, 2:08-CR-202-GLF, S.D. Ohio.

[6] 18 U.S.C. § 3621(b) (2012).

[7] 28 C.F.R. § 550.53(b)(1) (explaining that "a verifiable substance abuse disorder" is a prerequisite to enrollment in RDAP); BOP Program Statement 5330.11 § 2.5.8(d)(2) (BOP may verify an inmate's substance abuse disorder by consulting "[d]ocumentation to support a substance use disorder within the 12–month period before the inmate's arrest on his or her current offense").

[8] 18 U.S.C. § 3621(e)(2)(B).

[9] Pet'r's Pet. 2, ECF No. 1.

[10] *Id.* at 5.

requisites of due process" and delays in addressing his grievances have rendered it "futile."[11]

## APPLICABLE LAW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."[12] Section 2241 provides a district court with the power to grant a writ of habeas corpus. Pursuant to § 2241, a petitioner may attack the manner in which his sentence is being executed in the district court with jurisdiction over his custodian.[13] However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.' "[14] To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."[15] Furthermore, a § 2241 petition is subject to summary dismissal if it appears from the face of the pleading that the petitioner is not entitled to relief.[16]

---

[11] *Id.* at 3-4.

[12] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[13] *Reyes-Requena v. United States*, 243 F.3d 893, 900–01 (5th Cir. 2001); *Tolliver*, 211 F.3d at 877; *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992).

[14] *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

[15] 28 U.S.C. § 2241(c) (2012).

[16] *See Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998) (affirming summary dismissal under section 2241 without ordering an answer from respondent); *see also* Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (providing for summary dismissal of habeas petition).

## ANALYSIS

### A. Participation in the Residential Drug Abuse Treatment Program

In his petition, Smith first suggests the RDAP staff at FCI La Tuna violated his procedural due process rights when they denied him access to the treatment program. He does not contend the staff failed to follow BOP policies for the selection of RDAP participants. He claims he has a "30-year documented HISTORY" of marijuana abuse and the staff "mis-diagnosed" him.[17]

The threshold question for analyzing an alleged procedural due process violation is whether the complained of action — in this case the denial of access to a treatment program — implicates or infringes upon a protected liberty interest.[18] In the prison context, a protected liberty interest may emanate from either the Due Process Clause or a statute.[19]

The Due Process Clause confers a protected liberty interest in punishment that is not " 'qualitatively different' from the punishment characteristically suffered by a person convicted of crime."[20] So long as the action of a prison official is " 'within the normal limits or range of custody which the conviction has authorized the State to impose,' " there is no violation of a protected liberty interest conferred by the Due Process Clause.[21]

---

[17] Pet'r's Pet. 2, ECF No. 1.

[18] *Meachum v. Fano*, 427 U.S. 215, 223–224 (1976).

[19] *Kentucky Dep't of Corrections v. Thompson*, 109 S. Ct. 1904, 1908 (1989) (citation omitted).

[20] *Sandin v. Conner*, 515 U.S. 472, 479 n. 4 (1995).

[21] *Id.* at 484 (quoting *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

The Due Process Clause does not confer a protected liberty interest in RDAP.[22] The RDAP staff's determination that Smith is not eligible for RDAP simply does not impose a punishment " 'qualitatively different' from the punishment characteristically suffered by a person convicted of crime."[23] The staff's decision means only that Smith will serve the remainder of his original sentence under typical circumstances.

A statute may also confer protected liberty interests, "[b]ut these interests will be generally limited to freedom from restraint which . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[24] "The hallmark of a statute that has *not* created a protected liberty interest is *discretion*."[25] Where a statute grants a prison administrator discretion, it confers no rights on an inmate.[26] Thus, a "protected liberty interest exists only when a statute uses 'mandatory language to place a substantive limit on official discretion.' "[27] A prisoner's unilateral expectation of certain treatment is insufficient; a prisoner must "have a legitimate claim of entitlement to it."[28]

---

[22] *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) ("A prisoner has no constitutional right to participate in RDAP.") (citing *Reeb v. Thomas,* 636 F.3d 1224, 1228 n. 4 (9th Cir.2011)).

[23] *Sandin*, 515 U.S. at 479 n. 4.

[24] *Id.* at 484.

[25] *Richardson v. Joslin*, 501 F.3d 415, 419 (5th Cir. 2007) (emphasis added).

[26] *Meachum*, 427 U.S. at 226–28.

[27] *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998) (quoting *Wottlin v. Fleming*, 136 F.3d 1032, 1035 (5th Cir. 1998) (quoting *United States v. Tubwell*, 37 F.3d 175, 179 (5th Cir.1994))).

[28] *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995).

"After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."[29]  Accordingly, the BOP has the *discretion* to determine RDAP eligibility:

> The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner *the Bureau determines* has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.[30]

Because Congress granted the BOP broad discretion by statute, Smith does not have a protected statutory liberty interest in RDAP.[31]  Furthermore, the Ohio District Court's recommendation that Smith "be permitted to participate in the 500 hour intensive drug treatment program during his incarceration" was not binding on the BOP.[32]  Smith, therefore, has not met his burden of

---

[29] *See United States v. Wilson*, 503 U.S. 329, 335 (1992) (citing 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed")); 28 C.F.R. § 0.96 ("The Director of the Bureau of Prisons is authorized to exercise or perform any of the authority, functions, or duties conferred or imposed upon the Attorney General by any law relating to the commitment, control, or treatment of persons (including insane prisoners and juvenile delinquents) charged with or convicted of offenses against the United States . . .").

[30] 18 U.S.C. § 3621(b) (2012) (emphasis added); *see also Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment.").

[31] *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment.").

[32] J., ECF No. 154, Nov. 19, 2009, *United States v. Smith*, 2:08-CR-202-GLF, S.D. Ohio.

showing that he is "in custody in violation of the Constitution or laws or treaties of the United States."[33] He is not entitled to § 2241 relief.

## B. Delay in Processing Administrative Remedies

Smith also maintains the BOP's grievance system "does not comport with the rudimentary requisites of due process" and delays in addressing his grievances have rendered it "futile."[34] He asks the Court to investigate what he describes as "abuses" in the administrative process.[35]

An inmate does not have a constitutional entitlement to an adequate grievance procedure.[36] Moreover, an inmate "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction."[37] Additionally, it is well-settled law that federal prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits filed pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)—not through federal habeas proceedings.[38] Finally, even if the

---

[33] 28 U.S.C. § 2241(c) (2012).

[34] Pet'r's Pet. 3-4, ECF No. 1.

[35] *Id.* at 5.

[36] *See e.g., Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (explaining there is no constitutional right to participate in grievance procedures); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430–31 (7th Cir.1996) (explaining inmates do not have a constitutional right to an adequate grievance procedure; any right to inmate grievance procedure is procedural, not substantive, right and, thus, state's inmate grievance procedures do not give rise to liberty interest protected by due process clause); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (explaining inmates do not have a constitutional right to participate in grievance procedures).

[37] *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

[38] *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir.1997) ("A habeas corpus proceeding attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement. In contrast, a civil rights action [ ]

7

Court considered this claim under *Bivens*, Smith has made no showing that the conditions of confinement deprived him of "the minimal civilized measure of life's necessities,"[39] and that prison officials acted with deliberate indifference in rectifying those conditions.[40] Thus, he would not be entitled to relief. The Court, therefore, will not further investigate Smith's claims concerning the BOP's administrative review process.

## CONCLUSION AND ORDERS

The Court concludes that it appears from the face of Smith's petition that Smith is not entitled to § 2241 relief. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Smith's *pro se* petition under 28 U.S.C. § 2241 for a writ of habeas corpus is **DENIED** and his cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

**SIGNED** this _____12_____ day of January 2016.

FRANK MONTALVO
UNITED STATES DISTRICT JUDGE

---

attacks the conditions of the prisoner's confinement." (quotation omitted)); *see also Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) ("[A 42 U.S.C.] § 1983 action is a proper remedy for a ... state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.").

[39] *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

[40] *Wilson v. Seiter,* 501 U.S. 294, 303–04 (1991).